Good morning. May it please the Court, Mark McBride for Petitioner Leif Carlson. I'd like to reserve two minutes if I could, please. I'd like to first talk about the supplemental letter brief that my opponent filed. The distinction in that situation is that in this case, we're talking about the very reception of evidence, which is forfeiture by wrongdoing in this case, whereas in the Gleevee case, it talked about restrictions on closing argument. The closing arguments are not evidence. So I would submit that the DAG's letter brief really provides a sort of inapposite scenario. This is a misdemeanor case that deals with critical Sixth Amendment confrontation clause concerns. In this case, the trial judge made a facture of the – yes? The Gleevee case deals with harmless error. You're not claiming structural error here anyway, right? I'm not. But I do think, at least for me, that the harmless error issue is somewhere at the core of my concerns, and I hope you'll get to it. Certainly. Go ahead. Allow me to address that. Trial counsel put on the record in front of the Court that his client would not have testified but for the court's forfeiture by wrongdoing. Well, I don't know why that matters. I mean, the – whether he testified or not doesn't – you would then still have to demonstrate that testifying harmed him. And I don't know that testifying harmed him. It may not have harmed him. He still had a statement, right, that he had already made, among other things? Correct. His excited utterances. Well, so admissions. Yeah. He said, I made a mistake. I didn't mean to hit the child that way. His defense was that he was disciplining the child. Right. But he had already said essentially the same thing to the officers beforehand. Right. Which already come in. The only evidence left in this case was the – Is that your main argument, that he wouldn't have testified? My main argument is that this is – that there's just no factual evidence to support the court's forfeiture by wrongdoing argument. I think it's a strong argument. That's why I want to look at – and I – but I don't want to – why don't you make your argument the way you want to make it, because my colleagues may feel otherwise. So go ahead, i.e., if you want to do the merits argument, go ahead, as to the forfeiture. Well, they're both – I see Your Honor's point. In this case, it was a sort of four-day trial, and they had a – the trial court had a sort of pretrial hearing throughout the trial. The court went back and forth as to whether or not it should find forfeiture by wrongdoing. The record is clear. Ms. Carlson, the mother of the victim, indicated to the court that she would not bring the child to court under any circumstances. The trial court found that it didn't have enough evidence to find that my client had procured – And that statement, that she wouldn't have brought the child to court under any circumstances, is not actually in any transcript that we have. Is that right? Somewhat correct. You have the son at a pretrial hearing, Christian Berrigan, saying that he had heard his mother say that he was not going – she was not going to bring – And it appears that there was, before some other judge, some in-chambers discussion in which this was said. But it doesn't seem to be in any transcript, actually. Correct. It's not exactly how I said it, but you have Christian Berrigan. And we have other evidence, don't we? We have evidence that your client and his mother, Lee's mother, were seen talking during the day before – during the proceedings. We have evidence that Christian was told not to call his mother. We have evidence that mother and Lee oddly weren't at home at all during the trial. We have evidence that your client was barely there. I mean, there's – there's certainly – I think there is evidence that would support the idea – that supports the trial judge's conclusion that he did participate in procuring, or at least from which he could conclude that. I think practically that probably is what happened. I think – I've been thinking about that. And it's a sort of intractable situation where you have a husband and wife married, living in the same house, and the wife is ostensibly testifying against the husband for the people. So I think we as judges in the bar and lawyers, we're getting kind of wrapped around this pump handle of reading into it too much. But it's a home life. It's a dynamic in the home that's probably pretty horrific at the time. And isn't the underlying question what the standard is for the forfeiture with – under the Supreme Court case? Giles, is that the case? Correct. All right. In other words, does it – for the most part, Giles, and I gather the case is historically underlying it, seem to be talking about an active – I mean, the question is whether going along is enough or whether – or even helping in some fashion. I mean, if the wife says, you know, I don't want to – you know, I'm not going to let this kid testify. I'm going to – and I'm going to take him somewhere else. And the father, well, says, well, you know, I'll help you get a hotel room. Is that enough under Giles? Or is it – or does it have to be that he's instigating and procuring and doing it for his purposes, not because the wife has already independently decided that she's not going to produce the kid? The upshot of the – What's the standard? The standard is there's a significant – Giles should be read and can be read that there's a significant portion of intent that should go into a finding of forfeiture by wrongdoing. What do you mean by intent? I mean, he's – intent meaning that he – I mean, let's take – we don't really know what he did, which is the oddity here. Let's suppose the wife says, you know, I'm not – I'm leaving. I'm taking the kid away. I'm going to go stay in a hotel and, you know, I'm 100 miles away and – or 50 miles away, and he – and I want you to come with me or – and there seems to be some notion that she was, you know, in terrible mental distress, and he's worried about her. So he says, well, if you're going to do that, I'll come with you. Is that good enough with Giles or not? I mean, he has intent. I mean, he has intent to sort of support her in her decision not to show up in some respects. He didn't drag her in. Well, it can't – I would submit that it can't be the law that just because he benefits from it in a sort of consequentialist way that he then loses his right. Then he allows the trial court to walk into Crawford error. To answer your question directly, I would think that that would be enough. If – if the husband or whoever says, I'll go with you, you know, but in this case – Well, if that's enough, then there's a pretty good indication that that's what happened here. He – she wasn't there. He wasn't there overnight. He certainly seemed to know where she was. The concern, though, that the defense has and that we have in this case is that almost any other scenario is that you have a defendant sort of grabbing the witness and bringing them to court. It seems like that's what the record reflects below, and a defendant cannot be compelled to provide evidence against himself or herself. And so now that we talk about this, the merits issue in this case is what is enough in terms of, say, overt acts. And – Yeah. To me, I mean, no one – neither of you tried to define what the guile standard actually is, and I was trying to figure that out. But I still would like to know about harmlessness. I.e., let's assume that the – that we were to find that the – which I think is, you know, a close question, especially given the interoverlay, that there was a confrontation clause problem here. The – he – his – you began by saying, well, he wouldn't have testified. But I don't see how that leads you to any – directly to any – any lack of harmlessness. Because, A, his – his statements to the officers came in anyway, which weren't very different. And second of all, the – you would have to assume that his testifying was somehow adverse to him. And I don't know where you – why that is. You know, it could have been beneficial, not adverse. They obviously – I mean, they may not have believed him, or they may have believed him, but thought that nonetheless what he was testifying to still met the statutory standard. Where I disagree – where I have a problem with, say, the district court's discussion and what happened in the trial court is, but for the Crawford error in the case, the only evidence he would have would be my client's testimony, which – and then also the hearing – regarding the son hearing a smacking sound. So you would almost have a situation where you would have a trial court that would have to do – But the son also testified that the victim said several times, why didn't you punch me, or why didn't you hit me? That was evidence. It came in as – I don't think it came in as substantive evidence. I think it came in as excited utterances. That's not substantive. It is substantive evidence, but you don't have a percipient witness, say, that can talk about what really happened in this situation. And there's a lot of evidence about a physical manifestation, i.e., there was a black and blue mark a couple hours later. And there was – yeah, I mean, at least the sound that he was heard, a smacking sound, and that his brother found Leif crying louder than he'd ever seen him cry, and the testimony of the officer about how nervous that Leif was, as long as his father was in the room. I mean, there's quite a bit of other evidence that would have been in – that didn't testify. I would argue as well that the sort of willing Crawford violation, which was allowed in this case, is actual prejudice enough under Brett v. Abramson. When you have a – That's tantamount to a structural error argument, and you said you weren't making one. And you wouldn't get by if you did. I mean, even if you don't apply Van Aerstel directly, there's still no case that I know of, because it's a different kind of Crawford error, there's still no case I know of that suggests Crawford error is structural error. The trial court went to an extreme. The trial court did not instruct the jury that he had procured the wife's – actually, one of the concerns that the defense has in this case as well is the trial court also implicitly found that he contrived to make his son not available by making the – sort of grouping them in together. Certainly the son matters a lot more. There was basically nothing that the mother's testimony – A, the mother, it's much more plausible that she was an independent actor with regard to herself. But second of all, she – her testimony was – you know, didn't say very much. Well, in this case, the judge did not instruct the jury about procuring the absence of a witness. The prosecutor in this case asked that he not be allowed to go back in the home during the trial. The judge said, no, I won't do that. He said he – he what? The prosecutor during this case, as these facts were supposedly developing, asked the judge, Your Honor, I'd like an order that he not even be able to return home during the trial. Right. The court decided that the court didn't want to do that. He was not charged with dissuading a witness. So to punish a defendant by allowing Crawford error to occur sort of willingly short of, say, some other sanctions, to me, is a reversible error. Okay. Your time is up. Thank you. We'll give you a minute of rebuttal. Thank you. Good morning. May it please the Court. Jill Thayer for Respondent and appellee. In this case, the trial court found that the petitioner kept his wife and son from his trial to prevent them from testifying. Well, wait a minute. I mean, that's where I keep focusing. He did not find that. He didn't say he kept them from the trial to keep them from testifying. And if that's the standard, then it seems to me, I mean, with AIPA and everything else, because there's simply no evidence that he kept them in the sense of instigating and doing something that was against their will. It's not there. And that's not what the trial judge found either. Where did you see that he found that? Repeatedly throughout the judge's ruling, the entire ruling, he uses language from Giles saying he contrived to keep them away, he prevented them from testifying, he kept them away, he meant it. If that's what you think, and that's what you think the standard is under Giles? The trial, yes. I mean, that's, yeah. If you look at Giles, it's keeping them away, Giles, yeah, preventing a witness from testifying. That's what the trial judge said. And he What is the evidence of that? Pardon? Does that entail some notion that the witnesses would otherwise have been there? Yes, it does. And there was Where is that? What is the evidence of that? In Giles, I will also say I know. What is the evidence that that happened here? If that's your undertaking, where is it? Taking the subpoenas when they were attempting to serve the wife and son, he took their subpoenas and said, don't worry about it, I've got it under control. And she came and testified and said, yeah, I thought my kids were in trouble for something else. And he said, don't worry about it. But that's exactly what happened in Reynolds. She showed up the first day of the trial. There was no She understood that. That wasn't the problem. The reason she showed up is because her son, Christian, said, you need to come. Right. He, yes. And then Petitioner told Christian to stay away from his mother, and that's the second piece of evidence. It was he was something like 16 or 18. He was he was a young man. I mean, he and he was his mother's support person. He was the one that said, come on, mom, don't get in trouble. Don't get in trouble. Show up. But there was evidence that, in fact, she had told Christian not to contact her. And the father was, yes, there was evidence of that from the other brother. And the judge said he was admitting it. Although you said you said he wasn't. He specifically said he was. That was triple hearsay. But he said it, and he admitted it. Triple. Triple hearsay. And that but the judge specifically admitted it. And then then the the the the what the father actually said was your mother was terribly upset. She's stressed out. You know, don't call her. That and and it seemed in context that he was simply reinforcing her desire to stay away and be left left alone. There's I don't understand. And I don't really understand the relevance of don't contact your mother. He's keeping her from testifying. He's keeping her from getting the subpoena. He's saying, I don't want you to be in touch with the one, you know, telling the one person who might tell her, look, mom, you have to go to court or you might get arrested. The one person he's saying, and Christian later said, petitioner told me not to contact my mother, that the evidence you're looking at was triple hearsay. Supposedly some other brother said to some other said to some officer that it was the other the other way around. But that's not true. And that was triple hearsay. And the trial court said, I'll take it in, but not for the truth of the matter asserted. And I will also point out in Giles at page 360, Giles talks about a person who intercedes for another. So you can use an let me say specifically, it can also connote that a defendant forfeits confrontation rights when he uses an intermediary for the purpose of making a witness absent. So using an intermediary such as Ms. Carlson to keep a witness absent is also keeping a witness absent. Kagan. A witness being the child. A witness being the child, but also included the mother. But he showed the proof that he did that, as opposed to what seems to me to be the First of all, it seems entirely understandable that the mother would not want the child to testify. And strongly, strongly, strongly would not want the child to testify, independently and having nothing to do with her husband. Is that an implausible notion? Or not the most likely scenario by far? This is a factual finding. Right. But what is the basis for the factual finding? It turns out it's – if, again, whether it's an adequate factual finding depends on what the standard is. What does he have to demonstrate? You know what? Is acquiescence enough? Let's take my hypothetical. You know, the mother says, you know, I'm going to fall apart if I have to show up. I do not want this child to testify. I am taking the child and going somewhere else. I am not going to let that child testify. And I'm going off to a hotel in some secret place. And she's in terrible emotional state. And he says, are you going to do that? I'm coming with you. There's no evidence about that here. This case – I know, but I'm asking you. I want to know what the standard is. Suppose that's what he does. If the witness says absolutely, if there's evidence, you know, then perhaps – you I still think if you keep away the witness's supporting person who would say, she had already said that, I am not going to bring him in, supposedly, of course, none of that's in this record. And the trial court admitted it's not in the record, and the trial court said, I know nothing about that. Supposedly, her statement – It is in the record that she told the judge and told her son that she wasn't going to allow the son to testify. Is that not so? That's not in the record. She – what she said to another judge in another court, the judge – the trial court itself said, I don't know anything about it. But the prosecutor said, that's not what happened here. That's not what happened in the other court. There were disputes about what happened in that other court. And the trial court here, in this case, which is in the record, said, gee, if I had known she was so adamant about not bringing him in, I would have talked to her even more. He said, if I had known that, I would have – I would have tried to convince her even more than I already did, because it's the same trial court that said, you need to come back here, you need to bring your son tomorrow. And then, when this hazy evidence about supposedly her saying days earlier to some other court, which the prosecution denied and said that's misrepresenting the record, the trial judge said later during his finding, gee, if I had known that, I would have – I would have maybe even kept her here. You know, I mean, the trial court said, I've done everything I can to convince her to come. So that's – but all of that doesn't even matter, because the whole issue is the standard. And the standard is, there's no clear and convincing evidence the other way around. There's no clear and convincing evidence that that finding was wrong. There's nothing in there that's in the record that's in the record. Ginsburg. Pardon? Do you want to address the harmless error question? Well, first of all, it's not structural. That's not even a question. And, of course, yeah, it's harmless, too. That's the other thing. So, I mean, this Court, I know, is aware of – the Court already listed many of the facts. You don't help yourself by talking over the judge. Do you know that? I'm sorry. And, honestly, I think that's the first time I've ever yelled on the bench in 15 years. So it's not being helpful. The – and I don't know what I was going to ask, because I was interrupting. The issue of harmlessness. Yeah, I wanted to know specifically why it was harmless. Is it – well, it's in the brief, and I know in asking the other questions this Court's aware of it, but Christian did testify that he heard the smacking sound. He heard the, why did you hit me, when Officer Ward came. He saw the redness. He saw the bruising. And a defendant made an admission to Officer Ward that he lost control of his temper, and he hit him. So there's the case right there. It was a misdemeanor. So it's harmless. On the other hand – and this is – you know, this comes up a lot. You sort of wonder when you're sitting at this end why there was, you know, probably, you know, hours of concern with regard to whether this evidence was going to come in if it didn't matter. Somebody must have thought it mattered a real lot, or the energy of determining whether it was going to come in might not have happened. You could say that about any bit of evidence. That would just get rid of the harmless error issue entirely. Well, that's not true. I mean, it obviously was the best evidence, i.e., it was the child saying what happened. And there was – and everything else was more indirect than that. And the question is, does that make a difference with regard to the harmlessness question? And the question – When you have, you know, a very fine-cut judgment under the statute as to – it isn't that the father wasn't allowed to hit the child. It wasn't allowed to hit him in certain circumstances in certain ways. Do we have to credit the defendant's statement that he wouldn't have testified? He didn't – he didn't – his testimony didn't add anything to the prosecution's case already. And I think it's also not fair to say the prosecutor – of course the prosecutor wants to present her strongest case. And with that, the people ask that – Can you tell me, just for my – because I'm having trouble finding it at the moment – exactly where in the transcript the final determination by the judge to allow the evidence is? Do you know – happen to know what the – There's kind of two parts. There was the initial part where he said – okay, so I'll refer to the ER. There was an initial part where he said, look, I've read Giles. I'm going to find forfeiture. And that was – let's see – at pages 195 through, say, 199. And I will say at 197 where the court said, I certainly would have taken more time with her if she had said, I absolutely won't come. So then there was a little more evidence and argument. He said, look, I'll allow you to make argument and so forth. But I just want you to give – I want you to – this is my preliminary ruling. And then later on, after hearing some argument, the court said at, say, 201 to 203, this is my ruling. I've heard all of your argument. I'm not going to change it. He said specifically – where did he say it? Page 203, ER. As far as I'm concerned, the record supports a finding of deliberate witness tampering. So there's your intent, found the intent, and that's from Giles at 366. Okay. Thank you for your time. I'd just like to add two things briefly. Your Honor has been asking about what is the standard. In Giles, it says the rule requires the witness to have been kept back or detained by means of procurement of the defendant. And the Supreme Court went on to reject the argument that it was sufficient that the defendant benefit from his own wrong to invoke the exception. So when the Court is asking about the standard, in that sense, Giles can be read not as prophylactic, but as guiding and guiding the case. And in my opinion, I would submit that to find that there was forfeiture by wrongdoing here would be the direct opposite of what Giles sort of guides the lower courts to do. And the second point that I would make is that the other side of this argument, and the record below seems to bear this out, is that trial court has a sort of odd view of a home life. I mean, people who are married have their own lives and do their own things. And so I have a problem with the trial court sort of giving the impression that, you know, he can sort of lead around his spouse or his mate or his partner. And so in that sense, I would ask respectfully that the writ issue. Thank you. Okay. Thank you very much. The case of Carlson v. Attorney General of California is submitted.
judges: Bucklo, Berzon, Rawlinson